## Burford *versus* Burford.

In the absence of evidence to the contrary the court will presume, that where a will is signed with the name of the testator and with a mark, that he both wrote his name and made the mark to the will.

Since the Act of 1848, a signing with a *cross* or mark merely, is a sufficient signing of a will, where the execution was prior to the act, and the testator died after its passage.

Where the subscribing witnesses swear that they were present and saw and heard the testator sign, seal, publish, pronounce, and declare the instrument to be his last will and testament, it is a sufficient attestation and probate.

Where a testator divided his farm into three parts, designating them by metes and bounds, and calling them in the will divisions 1st, 2d, and 3d, and devises to his "son D. No. 3 of the said tract, the west end whereon the said D. resides. *Division 2d of said tract being previously given to my son G. B., by a special agreement in writing.*" It was held—

1. That the will contained no devise of part No. 2 to G.

2. But that it was evidence that such part had been conveyed to G. by the testator in his lifetime, by a special agreement in writing, and, in the absence of explanatory rebutting evidence, was conclusive against the party giving the will in evidence.

3. That the recital and admission in the will, showing that the title was out of the testator, operates to defeat the action of one claiming as heir of the testator.

ERROR to the Common Pleas of *Armstrong county.*

This was an ejectment by Thomas Burford against David, Reuben, and George Burford, to recover the one undivided eighth part of 300 acres of land. The plaintiff and the defendants are children and heirs of Reuben Burford, deceased, and both parties claimed title through him. The plaintiff claimed by descent as one of the heirs at law.

The defendants resisted a recovery and showed the will of Reuben Burford, deceased, dated the 12th May, 1847, which was admitted to probate on the 28th October, 1852, being shortly after the death of the testator. The will was objected to by the plaintiff, because it was executed on the 12th May, 1847, and is signed

[Burford *v.* Burford.]

with a mark, and not by *signing* his name; and also that the probate does not state that the witnesses were subscribing witnesses, nor that he signed in their presence. These objections were overruled, the will admitted, and the question of the legality of its execution reserved by the court. The only part of the will upon the record was as follows:—

"I order, that after my decease, the farm where I now reside, containing 300 acres, more or less, be divided into three divisions, as follows:—Division 1st on the east end of said tract, including the old improvement, beginning at the corner adjoining Elisha Wick, on the district line; thence along said line west, to a post marked as the corner of division first; thence by a south line across said tract to the southern boundary line of said tract; all east of this line to be division first of said tract. Division 2d and 3d of tract to be run off precisely according to the corner made and marked in the presence of John McCullough, who was called on as a witness thereto. I leave and bequeath to my son David Burford, 3d of said tract, the west end whereon he the said David resides. *Division 2d of said tract being previously given to my son George Burford by a special agreement in writing.*

"I have hereunto subscribed my hand and affixed my seal, this 12th day of May, 1847.

"*Witnesses present:*                                  his
   "E. M'BRIDE,                       REUBEN ⋈ BURFORD."
   "GEO. SHRIVER.                               mark

The probate was as follows:—

"*Armstrong County, ss.*

"Before me, register, &c., in and for said county, personally appeared Enos McBride, Esq., and George Shriver, the subscribing witnesses to the within will, who being sworn as the law directs, did depose and say that they were present and saw and heard the testator, Reuben Burford, Sr., sign, seal, publish, and pronounce and declare the foregoing instrument of writing, as and for his last will and testament, and at the time of his so doing, he, the said testator, was of perfect and sound mind, memory, and understanding, to the best of their knowledge and belief.

                                        "E. McBRIDE,
                                        "GEO. SHRIVER.
"Sworn and subscribed before me, this 28th of October, 1852.
                              "WM. MILLER, Register."

The plaintiff also alleged that the testator at the time of making the will was so enfeebled in mind by age and bodily and mental infirmity, as to be incapable of making a will.

The court below (BUFFINGTON, P. J.) instructed the jury that

[Burford *v.* Burford.]

the will was sufficiently executed, or that any defects in its execution were cured by the Act of 1848; and referred the question of the capacity of the testator to the jury, and further instructed them that if they found the testator of sufficient capacity to make a will at the time, "it passed the estate to the defendants, as well division No. 2 to George, as the other divisions to the other defendants, David and Reuben, and the plaintiff cannot recover."

The jury found for the defendants, and judgment was entered upon the verdict.

The plaintiff took this writ of error, and assigned for error here, the admission of the will in evidence, and the instructions to the jury as above recited.

*Drum* and *Phelps*, for plaintiff in error.—There was no disposition by will of that portion designated as "Division No. 2." In Duffield *v.* Morris, 8 *W. & S.* 348, the testator ordered his land to be divided into twenty-two shares, and devised twenty shares; held, that he died intestate as to two shares. The subscribing witness should attest the will in the presence of testator: Ellis *v.* Smith, 1 *Vesey* 11; Dunlop *v.* Dunlop, 10 *Watts* 155; Roasfelt *v.* Fulton, 7 *Cowan* 71; Shattuck *v.* Young, 2 *Smedes & Marsh.* 30; Act of 27th January, 1848; Act of 1833; Mullen *v.* McKelvy, 5 *Watts* 399; *Dwar. on Stat.*, 9 *Law Lib.* 353; Murry *v.* Murry, 6 *Watts* 353; Bradford's case, 1 *Parsons* 153.

*Golden* and *Fulton*, for defendant in error.—In Duffield *v.* Morris there was no devise at all of two parts, nor any words indicating the persons for, or how they were designated, and the court very properly held that the testator died intestate as to them. The witnesses were present, as the attestation itself shows. But it was unnecessary; nor that it should be subscribed: Hight *v.* Wilson, 1 *Dal.* 102; 6 *S. & R.* 215; Eyster *v.* Young, 3 *Yeates* 511; Hays *v.* Harden, 6 *B.* 109; Shinkle *v.* Cood, 5 *Harris* 162; Davis *v.* Morris, 5 *Harris* 205; Irish *v.* Smith, 8 *S. & R.* 573.

The opinion of the court was delivered by

WOODWARD, J.—The plaintiff claimed title in this ejectment as heir at law of his deceased father, Reuben Burford, Sr. To defeat his claim, the defendants, also sons and heirs of the decedent, set up his last will and testament. The plaintiff objected to its being received in evidence, on the ground that it was subscribed with a cross, and not duly attested by the subscribing witnesses. The objection was properly overruled. The will appears to be signed with the name of the testator, and a cross, the subscribing witnesses swearing they were present, and saw

[Burford *v.* Burford.]

and heard him sign, seal, publish, pronounce, and declare the instrument to be his last will and testament. In the absence of evidence to the contrary, we would be at liberty to presume that the testator both wrote his name and made his cross, a mode of signature which is not without distinguished precedents. But if it be regarded as a signing with a cross merely, it is sufficient under our Act of 1848, and the attestation is in due form, and adequate to establish the instrument as his will.

The will in evidence, did it show title out of the plaintiff to the premises in question? We have not been favoured with a copy of the whole will; but from such extracts as are furnished, we learn that the testator divided his farm into three parts, designating them by metes and bounds, and calling them in his will "divisions" first, second, and third. Then he says, I leave and bequeath to my son, David Burford, third of said tract, the west end whereon he the said David resides. *Division second of said tract being previously given to my son George Burford, by a special agreement in writing.*

What disposition he made of division first, and of the residue of his estate, among his eight children, we are not informed. The plaintiff claims that he died intestate as to division second; and this ejectment is for an undivided interest of that part of the testator's farm. The court considered the words quoted above as a good devise of division second to George; but we feel constrained to differ from the learned judge on that point.

We think we should do violence both to the testator's language and intention by construing what he says of No. 2 a devise. It is not in the form of a devise—not a word of testamentary character being employed. That he knew well how to express a devise, is proved by the preceding clause, wherein he gives David No. 3; but he used no language of similar import in respect to George and No. 2. On the contrary, he assigns expressly his reason for not making a devise of No. 2: that it had been previously given to George by a special agreement in writing. Now, if that was true, and it is not for the defendants who offered the will in evidence to question it,—if this land had been given to George in writing, previously to making the will, the testator had no power over it whatever, and the most apt words of devise would not have affected it. How then can these words, which are not words of devise, be considered so *potential* as to pass land which the testator did not own, either when he made his will, or at his death?

But if we should adopt the conclusion of the court below, I fear we should trespass not more against the language of the testator than against his intention. He had other children beside these sons. He had given No. 2 to George by a *special* agreement. The agreement was not in evidence, and we know not

[Burford v. Burford.]

what it was; but it is easy to conceive that No. 2 may have been the best part of the estate, and charged with legacies or duties to other members of the testator's family. At any rate George held it, and his father meant he should hold it under that special agreement—a purpose which we would balk by permitting him to hold it under the will. The testator puts the estate upon the special agreement—the court below upon the will. The testator not only makes no devise of the land, but gives his reason for making none—the court says that is a devise.

Wills are not to be constructed for dead men in this way. When they have done what they could to exclude the idea of a devise, we are rather to help them, than to *force* a devise on them. Wills would be wills no more: the right of volition would be gone, if, when a man explains why he does not devise a particular part of his estate, we call that a devise. The attempt to make a will for a part of testator's estate, which he had omitted to mention, was frustrated in Duffield v. Morris, 8 *W. & S.* 348; but here he has omitted nothing; but has used language to exclude the *animum disponendi.*

Setting aside the opinion of the court on this point, the question still recurs, however, did not the will show title out of the plaintiff? It was a solemn admission by the testator in writing that the title was in George and not in himself. The plaintiff, as claiming under the testator, is affected by that admission; and as there was nothing to explain, qualify, or rebut it, it was conclusive against the plaintiff, and should have been the ground of the ruling.

If there is money to be paid, or conditions to be performed under the special agreement, whereby George holds the land, the executor, and not this plaintiff, would be the party to enforce the obligation by action. If the plaintiff have any rights under that special agreement, it is a sufficient answer to his action that they were not shown. The defendant is in possession under a written gift admitted by the plaintiff's ancestor. Before the plaintiff can oust him he must show a superior right. Having no legal title to stand on, he must show what equities are due to him before he can call on the defendant to perform them. The case was bare of such proofs, and, therefore, though placed on wrong ground, was properly ruled against the plaintiff.

A question very analogous to this arose under George Colden's will made in 1775 (see Denn v. Cornell, 3 *Johns. Cases* 174), in which he recited, "whereas I have conveyed to my son Cadwallader my lands at Caldenham, and to my son David my lands in the township of Flushing, I give and devise all my remaining lands and real estate whatsoever to my sons Cadwallader and David and my daughter," &c.

In an action of ejectment by the heir at law against the tenant

[Burford *v.* Burford.]

of David no other title was shown, but Ch. KENT held the plaintiff estopped by the recitation in his father's will, and that an estate in fee simple and not for life was to be presumed in David for the Flushing land. RADCLIFFE, J., concurred in the judgment, but not on the ground of estoppel.

Neither of the judges, nor any of the counsel, thought of treating it as a devise, but the fact recited and admitted in the will operated to defeat the plaintiff, and such is the operation we give to the will in this case.

The judgment is affirmed.